UNITED STATES DISTRICT COURT

DISTRICT COURT

UNITED STATES OF AMERICA

VS.                                                                NO. 3:03CR198(RNC)

FRANCIS R. BARRETTA                                  JANUARY 18, 2005

### MEMORANDUM IN AID OF SENTENCING

On November 8, 2004, defendant Francis R. Barretta pled guilty to possession with intent to distribute heroin, in violation of 21 U.S.C. §841(a)(1) and (b)(1)(C). His sentencing is scheduled for January 28, 2005. Purporting to reference the United States Sentencing Guidelines, the Probation Officer computed defendant's total offense level at 29 – including a determination that defendant is a Career Offender under U.S.S.G. §4B1.1(a). Whether or not defendant is "legitimately" a Career Offender, his host of addiction related larcenies and other crimes place him in a Criminal History Category VI. That offense level calculation results in an imprisonment range of 151-188 months. Defendant objected to classification as a Career Offender because that designation is unwarranted under the facts of this case. (Exhibit A). In a January 11, 2005 addendum to its pre-sentencing report, the Probation Officer declined to change his recommendation that defendant should be sentenced as a Career Offender. (Exhibit B). Defense counsel and counsel for the Government had been working with a sentencing range of 41-51 – indicating a shared view that

the seriousness of Mr. Barretta's record, as completed by the Pre-Sentence Report is severely overstated. (Exhibit D).

Subsequent to defendant's objections to the pre-sentence report and the Probation Office's addendum, the United States Supreme Court decided <u>United States v. Booker</u>, -- S.Ct. – 2005 WL 50108 (January 12, 2005). In <u>Booker</u>, the Supreme Court held that the Sentencing Guidelines conflicted with Sixth Amendment requirements. As a result, a mandatory application of the guidelines rendered them unconstitutional. The <u>Booker</u> court held that, although the mandatory nature of the Guidelines was unconstitutional, the rest of the Guideline scheme could be severed, making the Guidelines advisory to sentencing courts. In short, <u>Booker</u> held that district courts should take the Guidelines into account when sentencing, but that they are not required to sentence within the guideline range. Further, under <u>Booker</u>, sentences are reviewed for their reasonableness in view of 18 U.S.C. §3553.

To the extent the Court is advised by the Guidelines in considering defendant's sentence, this case presents circumstances warranting significant departure from the sentencing range recommended by the Probation Officer under the Guidelines. Defendant respectfully requests that the Court sentence him far below the recommended Guidelines range because his criminal history category very substantially over-represents the seriousness of his prior crimes. In its pre-sentencing report addendum, the Probation Officer did not disagree with such a complete departure.

Additionally, the facts underlying the instant conviction are outside the heartland of possession with intent to distribute cases -- that is, the circumstances of defendant's crime were not adequately taken into account by the Sentencing Commission in determining the sentencing range for the offense. Accordingly, defendant respectfully requests that the Court depart downward under U.S.S.G. §5K2.0.

Defendant further requests the Court to consider his sincere, resolute and successful rehabilitation in connection with his long history of substance abuse. Francis Barretta is a recovering addict who has struggled with various drug dependencies for most of his life. He is currently employed, and in a stable, loving and long-term relationship. He enjoys a good relationship with his daughter, and is working on rebuilding a relationship with his son. As discussed more fully, infra, Mr. Barretta's extensive criminal history has been non-violent, and rooted primarily in the type of theft committed by addicts to support their drug habits– a habit which Mr. Barretta has hopefully ended. Moreover, but for a slight change in the facts surrounding the instant offense, Mr. Barretta would have been guilty of only simple possession – not possession with intent to distribute. These factors militate toward a reasonable sentence which reflects Mr. Barretta's current efforts and achievements, a realistic review of his prior criminal history, and the factual circumstances of this offense.

## ANALYSIS

**A.  Mr. Barretta's criminal history category over-represents the seriousness of his prior crimes; he should not be categorized as a Career Offender.**

Although Mr. Barretta has been convicted of numerous crimes since 1994,[1] they were primarily minor larceny offenses, with a couple of non-violent burglaries.  In his statement to the Probation office (Exhibit C), defendants tells the Court that he remained free of addiction for 13 years, until he "fell off the wagon" in the mid 90's.  After that, he stole to maintain his drug habit.  Notably, defendant was never armed, and never used violence when committing any crimes.  Accordingly, we take issue with the categorization as a Career Offender by the Probation Office, and respectfully request the Court to reject completely, or to depart downward from, the sentencing range resulting from that classification.

The Probation Office relied on two convictions for Robbery in the Third Degree, the factual allegations of which defendant denies.  On April 3, 1995, defendant was convicted of third degree robbery.  The pre-sentence report recites facts alleged in the police report – that defendant purportedly pushed a carriage of stolen goods out the front door, and that he assaulted a security guard at a Bradlees store --  "defendant elbowed him in the head and knocked him back."  (Pre-sentence Report at ¶48).  Defendant denies those allegations.  He freely admits he intended to steal merchandise from Bradlee's, however, he

---

[1] Only a defendant's criminal history within 15 years of his offense date is relevant in determining his criminal history category.  U.S.S.G. §4A1.1 Application Note 1.

4

maintains he left the merchandise in the store -- and <u>never</u> pushed items in a carriage outside the front door. (Exhibit C). Although defendant was approached by a store security officer, he never assaulted him. (Exhibit C). Rather, he fled and ran to escape in a car. (Exhibit C). Further, the statement supposedly taken from the other occupant of the vehicle was untrue – concocted to curry favor with the police because the other occupant had in fact stolen the plates on the car. (Exhibit C). Defendant pled guilty to the charge to avoid the possibility of doing consecutive time later on -- even if acquitted of the robbery charge he would surely have been guilty of attempted larceny as he already been sentenced to concurrent time on other pending larcenies (Exhibit C).

With regard to the second Robbery 3rd conviction, discussed in paragraph 63 of the Pre-Sentence Report, defendant likewise vigorously disputes the factual allegations. Defendant never had a plastic toy gun and there is no claim he ever showed anyone such a gun to obtain property. (Exhibit C). Although Mr. Barretta attempted to run from the store, and was stopped by a store officer and a New Haven Policeman working security there, defendant never struck anyone. (Exhibit C). The officers tackled defendant and subdued him, essentially beating him up. (Exhibit C). Even though Mr. Barretta disputed the factual basis of the charges, he would have faced a 6 ½ year sentence on a earlier burglary conviction for violating his conditional release if he were convicted of <u>anything</u>. (Exhibit C) Defendant's attorney, provided by the Public Defender's Office, strongly recommended that he plead to the reduced robbery charge, based on a condition of no revocation of the conditional discharge. (Exhibit C).

5

Defendant committed no violence in connection with the "crimes of violence" offenses the Probation Office used to classify him as a career offender under U.S.S.G. §4B1.1. In each of the instances cited in Paragraphs 48 and 63, there was no physical force "overcoming resistance . . . to the retention [of property]" (even based on the reports). In the second case, it is quite clear defendant had left the store <u>without the property</u> before any alleged altercation. That is perhaps a bit less clear concerning the 1996 robbery he pleaded to in Meriden. While Mr. Barretta insists he never took the goods to the front door or outside, even the police report does not indicate that the alleged elbow to the head had to do with anything other than an escape – and not to retain the property. If defendant's reading of the statute is correct, on both instances he lacked the "at least two prior felony convictions of . . . a crime of violence". Clearly, under Connecticut law, even the alleged elbow to the head would not be sufficient to result in a felony assault charge – rather a misdemeanor Assault in the Third Degree, as there clearly appears to have been no "serious injury".

Defendant's classification as a Career Offender is aggravated by having a criminal history category of VI. Because those classifications largely over-represent the seriousness of his criminal history, a very steep downward departure is warranted. Under applicable law, two types of downward departures are available to the Court -- a horizontal departure to a lower criminal history category under U.S.S.G. §4A1.3(b)(1), and a vertical departure to a lower offense level under <u>United States v. Rivers</u>, 50 F.3d 1126, 1130 (2d Cir. 1995). Section 4A1.3 provides that downward departure may be appropriate "[i]f reliable

6

information indicates that the defendant's criminal history category substantially over-represents the seriousness of the defendant's criminal history or the likelihood that the defendant will commit other crimes, a downward departure may be warranted." This guideline provides for a "horizontal departure" across the sentencing table to a lower criminal history category. Rivers, 50 F.3d at 1130. Section 4A1.3, however, limits such a departure for a career offender: "[t]he extent of a downward departure under this subsection for a career offender within the meaning of §4B1.1 (Career Offender) may not exceed one criminal history category." The Second Circuit recognized the "unique impact of criminal history in the sentencing of career offenders," and the very limited nature of the departure for such defendants. Id. at 1130. Because, under the career offender guideline, criminal history determines both the criminal history category and offense level, the Second Circuit held that a sentencing court may reduce a career offender's criminal history category, offense level, or both:

> We agree with the other circuits that section 4A1.3 manifests the Commission's view that a sentencing judge should exercise discretion whenever the judge concludes that the consequences of the mathematical prior-history calculation, prescribed by sections 4A1.1 and 4A1.2, either underrepresent or overrepresent the seriousness of a defendant's prior record. We also agree that in the case of a defendant whose offense level is raised by his criminal history into career offender status, such discretion may be exercised, to the extent thought appropriate, to reduce either the criminal history category or the offense level, or both.

Id. at 1131.[2]

---

[2] "This type of departure is most frequently used when a series of minor offenses, often committed many years before the instant offense, results in a CHC that overstates the seriousness of the defendant's prior record." Untied States v. Carrasco, 313 F.3d 750, 757 (2d Cir. 2002).

In deciding whether a downward departure is appropriate for a career offender convicted of a drug offense, a sentencing court may consider the following factors: (1) the amount of drugs involved in defendant's prior offenses; (2) the sentences previously imposed; and (3) the amount of time previously served compared to the sentencing range called for by placement in criminal history category VI.  <u>United States v. Mishoe</u>, 241 F.3d 214, 219 (2001).  Mr. Barretta has <u>never</u> been previously convicted of a drug offense.  The maximum sentence imposed on defendant for his past convictions for theft and failure to appear was 3 and ½ years (42 months) on a burglary in the second degree conviction in 1995.  The other concurrent sentences defendant received ranged from 90 days to 3 years.  Mr. Barretta served about 2 and ½ years, being released on December 1, 1997.  Defendant returned to jail in January of 2000 and was released July 24, 2001 – serving approximately another 1 and ½ years.  In the entire relevant period prior to this offense, defendant served a total of approximately 4 years.  Placement in criminal history category VI – as a supposed Career Offender -- subjects defendant to 12 and ½ to 15 years imprisonment.  There would clearly be a <u>huge</u> disparity between the time defendant previously served compared to the sentencing range to which he now may be facing.  The Second Circuit has recognized that such disparity may warrant a downward departure:

> [i]n some circumstances, a large disparity in that relationship might indicate that the career offender sentence provides a deterrent effect so in excess of what is required in light of the prior sentences and especially the time served on those sentences as to constitute a mitigating circumstance present "to a degree" not adequately considered by the Commission."

<u>Id.</u> at 220.

Such is the case here. Mr. Barretta has never been convicted of a drug offense.[3] His longest sentence was 3 and ½ years to serve. The other sentences in the mid-90's time frame, where he "cleaned up" his numerous pending larceny, ranged up to concurrent 3 year terms. A sentence of 12 and ½ to 15 years far exceeds any possible deterrent effect required to prevent defendant from recidivism. This is particularly so where defendant has been clean, sober, and for more than a year now employed, and in a stable, supportive relationship. Other sentencing courts have departed downward where a defendant's criminal history category substantially over-represented the seriousness of that history. In United States v. Hammond, 37 F.Supp.2d 204 (E.D.N.Y 1999), the Court reduced defendant's criminal history category in sentencing him for conspiring with an informer to buy 15 grams of cocaine. Defendant's past criminal history, consisting of "minor drug crimes involving facilitation of the sale of drugs and the kind of petty criminality associated with a poor addict's attempt to acquire money for the purchase of narcotics," resulted in a category VI placement mandating a 151-188 month term of imprisonment. Id. at 205. As here, the Probation Office classified Hammond as a Career Offender "in view of his many offenses over the years." Hammond argued, and the Government did not dispute that, his criminal history category seriously

---

[3] That fact does not necessarily impact Probation's placement of him as a Career Offender. However, it is significant. Considering how many drugs he has purchased since 1994, the fact he was never arrested on a drug offense supports his claim that, because of his heavy addiction, the heroin "burned a hole in his pocket" and his "possession" at any given time was brief and he never was a seller.

overstated his criminal history. Id. at 207. The court agreed, departing down to criminal history category III. Id.[4]

In United States v. Wheeler, No. 04CR424-15(RWS), 2004 WL 2646625 (S.D.N.Y. Nov. 18, 2004), defendant was charged with conspiracy to distribute and possession with intent to distribute heroin. He was classified as a career offender and sought a downward departure because his criminal history category over-represented the seriousness of his past crimes. The court granted the departure:

> In view of the quantities involved in the earlier offenses, the significant disparity between the sentences imposed and time served with regard to these earlier convictions and the sentence dictated here by the career offender guideline, the Criminal History Category that would have applied were it not for the career offender designation, and the remoteness in time of two of Wheeler's three prior convictions, a downward departure is warranted here, consisting of a horizontal downward departure from Criminal History Category VI to Criminal History Category V and a vertical departure of 8 offense levels, resulting in an offense level of 27.

Id. at *7. Here, like the Wheeler defendant, there is a significant disparity between the sentences imposed and time served for defendant's earlier convictions and, unlike Wheeler, he has never been convicted of a drug offense. Under Wheeler, a downward departure is warranted. See also United States v. Paulino-Duarte, No. S100CR686(HB), 2001 WL 290047 (S.D.N.Y. March 26, 2001) (analyzing Mishoe factors and granting downward departure because criminal category overstated seriousness of past criminal behavior).

---

[4] The court also appeared to give consideration to the fact that Hammond had been trying to overcome his addiction with varying degrees of success -- "[l]ike many other addicts struggling to avoid narcotics, he has repeatedly relapsed into the drug culture." Id. at 205.

10

Despite the police report cited in the pre-sentence report, defendant was never violent in connection with any prior crime. His criminal history is the unfortunate result of petty thefts often attendant to a long history of powerful drug addiction – which defendant had once successfully beat in the past, and which he is currently beating. Defendant has no history of drug crimes. His sentences and time served for the prior crimes committed average approximately 3 years for "all of them" together – considerably shorter than the monster incarceration he faces under the Guidelines calculations of the Probation Office. Decisions under the Guidelines support a very substantial downward departure here (even if the court were to find he was a Career Offender).[5] Additionally, independent considerations warrant a reduced sentence, including the circumstances of defendant's prior crimes, his battle with drug addiction, and his current efforts to remain drug-free, steadily employed and connected to the community.

> **B.    The circumstances of Mr. Barretta's offense warrant a downward departure because the offense of conviction overstates the seriousness of his criminal conduct.**

Defendant pled guilty to possession with intent to distribute heroin, in violation of 21 U.S.C. §841(a)(1) and (b)(1)(C). The facts of defendant's offense, however, take his conduct outside that usually involved in drug distribution cases -- that is outside the "heartland" of those cases. Indeed, but for a slight deviation in the facts, defendant's conduct would not have amounted to possession with intent to distribute in this Circuit.

---

[5] That aspect of the Sentencing Guidelines purporting to make him a Career Offender has, of course, been held not binding by the <u>Booker</u> court.

11

To the extent the Court is advised by the Guidelines in considering defendant's sentence, U.S.S.G. §5K2.0(a) provides for a downward departure where an offense characteristic is not adequately taken into account by the Sentencing Commission in determining the sentencing range, i.e. when the facts take the offense outside the heartland of cases covered by an offense guideline. Even prior to its decision in Booker, the Supreme Court made clear in United States v. Koon, 518 U.S. 81 (1996) that the Sentencing Guidelines were never intended to displace the fundamentally individual nature of the sentencing function or to eliminate judicial discretion in fashioning an appropriate sentence. Id. at 113. The Court also reaffirmed the power of the district court, subject only to abuse of discretion review, to depart if it finds a "mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the guidelines that should result in a sentence different from that described." 18 U.S.C. §3553(b).

Koon also confirmed the breadth of the district court's decision, stating that the guidelines "place essentially no limit on the number of potential factors that may warrant a departure." 518 U.S. at 106. Unless a circumstance in question is flatly forbidden as a basis for departure, the sentencing court, "informed by its vantage point and day-to-day experience in criminal sentencing," must determine whether a particular factor takes the case outside the "heartland" of the applicable guideline. Koon, 518 U.S. at 98, U.S.S.G. Chapter 1 Part A(4)(b)("heartland" approach of guidelines for "typical cases").

Here, defendant's lack of intent to distribute any drugs to third parties places his specific offense outside the heartland of cases covered by U.S.S.G. §2D1.1 (drug distribution guideline). Specifically, as recounted in defendant's written statement to the Probation Office (not disputed by <u>any</u> other facts before the Court), (Pre-sentence Report ¶16), defendant pooled his money with his friend John for the purpose of purchasing drugs. Defendant and John traveled together to the purchase location, John driving. Defendant, using the pooled money, exited the vehicle and the transaction ensued. Defendant re-entered the vehicle. Before he had the opportunity to give John his share of the drugs, the vehicle was pulled over by police. Defendant had the entire purchase "on him" when subsequently searched by the officers. On the basis of these facts, defendant was charged with possession with intent to distribute. The simple fact is that had John accompanied defendant to pick up his <u>paid-for</u> half of the drugs, defendant would have been guilty, at most of simple possession. Possession with intent to distribute overstates the seriousness of defendant's criminal conduct and the concomitant penalties.

The Second Circuit considered such a situation in <u>United States v. Swiderski</u>, 548 F.2d 445 (2d Cir. 1977). In <u>Swiderski</u>, co-defendants went together to purchase drugs from a government informant. They both sampled the drugs at the purchase site. Defendant Swiderski paid the informant for the drugs, placed them in his pants pocket, and the co-defendants left together. Authorities picked them up a short time later and found the drugs in defendant Santos' purse. <u>Id.</u> at 448. At trial the government argued that the drugs were

13

purchased with the intent to distribute them to third-parties.  It also argued that even if the defendants purchased the drugs intending to share only between themselves, that evidence was sufficient to convict them of possession with intent to distribute.  Id.   The Court held that "where two individuals simultaneously and jointly acquire possession of a drug for their own use, intending only to share it together, their only crime is personal drug abuse simple joint possession, without intent to distribute the drug further." Id. at 450.  The Court emphasized the distinction in the Comprehensive Drug Abuse Prevention and Control Act between "drug offenses of a commercial nature and illicit personal use of controlled substances." Id. at 449.  In a case where "both acquire possession from the outset and neither intends to distribute the drug to a third person, neither serves a link in the chain of distribution" and the case is simply one of possession.  Id. at 450.  The Act's concept of "transfer," the Court noted, "was not intended to include the exchange of physical possession between two persons who jointly acquired and hold the drug for their own use." Id.

The only distinction between this case and Swiderski is that defendant physically went to buy the drugs alone – while his friend waited in the truck – after they had pooled their money.  It is argued, however, that defendant and John acquired "simultaneous possession" when defendant made the purchase with the pooled money.  As the Second Circuit recognized "[i]t is well established that possession of a controlled substance may be shared with others and that it may be established by evidence of actual, physical possession **or** on the basis of

the power to exercise control over the substance." Id. at 449, n. 2 (citing U.S. v. Davis, 461 F.2d 1026 (3d Cir. 1972) (emphasis added). Both "purchasers," therefore, are in the same position. See also United States v. Rush, 738 F.2d 497, 514 (1st Cir. 1984) (recognizing that the Swiderski holding may apply to situations involving "a couple of defendants" and "a small quantity of drugs"); United States v. Oestmann, 60 M.J. 660, 665-666 (Military Court of Criminal Appeals 2004) (recognizing that where two individuals acquire possession of drugs for their own use jointly and simultaneously, intending only to share it together, their only crime is simple possession).

     In sum, the rather technical nature of the violation concerning distribution places the facts outside the heartland of the usual "possession with intent to distribute" cases, and therefore warrants a very significant downward departure. Unlike defendants who intend to distribute drugs in their possession commercially to third parties, defendant's and John's constructive joint possession "does not pose any of the evils which Congress sought to deter and punish through the more severe penalties provided for those engaged in a 'continuing criminal enterprise' or in drug distribution." Swiderski, 548 F.2d at 450. Defendant's offense conduct is outside the heartland of those generally convicted of possession with intent to distribute – he did not serve as a link in a chain of distribution. The defendant respectfully requests the Court substantially depart downward under U.S.S.G. §5K2.0 because the drug distribution guideline, §2D1.1, simply does not take into account defendants such as Mr. Barretta who

15

merely shared drugs – and their cost -- with another person, never intending to distribute to third parties.

As the Supreme Court made clear in <u>Koon</u>, recently reaffirmed in <u>Booker</u>, judicial discretion remains of paramount importance. The sentencing court is in the unique position, because of its vantage point and experience in criminal sentencing, to determine whether a particular factor takes a case outside the "heartland" of an offense. Mr. Barretta's behavior here, as indicated in <u>Swiderski</u>, did not involve the intent to distribute drugs. Defendant respectfully submits that his sentence should reflect that.

    **C.    Defendant has made a successful effort to turn away from drug addiction and the behaviors that brought him before this Court.**

Defendant has taken responsibility for his addiction and the results it has brought him. He accepts responsibility for possessing an illegal substance and for his part in making a joint illegal purchase. He is clean and sober. Mr. Barretta has been receiving outpatient drug treatment from MAAS in New Haven, Connecticut since December 2003. Prior to that, he was an in-patient at Crossroads, Inc., a drug treatment facility in New Haven. As noted in the Pre-sentence Report at ¶84, he currently participates in the MAAS anti-abuse program and weekly individual counseling, and is in compliance with his treatment.

Defendant has committed no criminal offenses since his arrest in this case. He had turned his back on the life of petty theft spawned by his drug habit. Instead, Mr. Barretta is gainfully employed. He works as a carpenter with the United Brotherhood of Carpenters and Joiners of America, Local 24, based in Wallingford. He earns $25.00 per hour, and is a Journeyman member of the United Brotherhood of Carpenters and Joiners of America. His future, under the circumstances, can be bright.

Defendant has resources in the community. He lives with -- and is committed to -- Paula Gladys, employed as the Director of Human Resources at the VNA in Hamden. Ms. Gladys is a caring person who will not tolerate or condone drug usage, but has supported him through his recovery and in this case. Mr. Barretta and Ms. Gladys wish to marry. Defendant has a good relationship with his daughter, Christina Barretta, a college student. He is working on improving his relationship with his son, Michael.

It is true defendant has a lengthy criminal history of theft, -- and that he has here admitted responsibility for his behavior. Notwithstanding, Mr. Barretta has demonstrably turned a corner. He has "cleaned-up" his act and is ready to move forward after at most a reasonable period of incarceration. He takes responsibility for what he has done. He told the Probation Office: "he realizes that this may be his last chance to maintain a drug-free, crime-free lifestyle." (Pre-sentence Report at ¶85). Viewing Mr. Barretta's criminal history in context, and considering that he never intended to distribute anything, his recommended guideline sentence is extremely harsh. This is particularly so where co-

defendants received <u>substantially</u> lighter sentences, for example, Christopher DeMartin (five years probation for possession with intent to distribute); Kimberly A. Andrews (three years probation for possession with intent to distribute); and Victor Luis Rivera (48 months imprisonment with 48 months supervised release for conspiracy to distribute <u>100</u> <u>grams</u> <u>or</u> <u>more</u> of heroin [defendant was charged with between 20 and 40 grams]); Denise Tarka (suspended sentence).

      For all the foregoing reasons, defendant respectfully submits that the Court sentence him to a substantially lower period of incarceration than the 12 and ½ to 15 years that the Probation Office calculated under the guidelines and also substantially below the 41-51 months both defendant and the Government had estimated was the relevant guidelines range.

Respectfully submitted,
THE DEFENDANT

By: /s Ira B. Grudberg/
Ira B. Grudberg (ct00178)
Jacobs, Grudberg, Belt, Dow & Katz, P.C.
350 Orange Street
P.O. Box 606
New Haven, CT 06503
Telephone (203) 772-3100
Facsimile (203) 772-1691
igrudberg@jacobslaw.com

## **CERTIFICATION**

I certify that the foregoing Memorandum in Aid of Sentencing was sent by first class, pre-paid mail this 18th day of January, 2005 to:

H. Gordon Hall
Assistant United States Attorney
157 Church Street, 23rd Floor
New Haven, CT 06510

*/s Ira B. Grudberg/*
Ira B. Grudberg