LAW OFFICES OF

# Jacobs, Grudberg, Belt & Dow, P.C.

350 ORANGE STREET
POST OFFICE BOX 606
NEW HAVEN, CONNECTICUT 06503-0606

TELEPHONE (203) 772-3100
FAX (203) 772-1691

HOWARD A. JACOBS
IRA B. GRUDBERG
DAVID L. BELT
WILLIAM F. DOW, III
JONATHAN KATZ
DAVID T. GRUDBERG
BERNARD CHRISTIANSON
ROSEMARIE PAINE
JOSEPH J. PACKTOR
ALINOR C. STERLING
ANDREW I. SCHAFFER
TRISHA M. MORRIS
EDWARD J. McMANUS
JOSHUA D. LANNING

ISRAEL J. JACOBS (1918-1963)

OUR FILE NUMBER

December 29, 2004

C03-1598

**HAND DELIVERED**

Joseph Montesi
United States Probation Officer
157 Church Street
New Haven, CT 06508

Re:  U.S. v. Francis R. Barretta

Dear Mr. Montesi:

I am sorry I was unable to make the deadline of December 27th, but the holiday interfered and there was much in your Presentence Report which surprised me and had to be dealt with.

As to Paragraph 65, my count, including the blizzard of concurrent three year sentences that he pleaded to, results in a total of 31 criminal history points. I believe there were nine sentences of more than a year and a month, plus the maximum of four on all the others, equaling 31. Obviously it makes no difference in terms of him having a criminal history category of VI.

We object to your determination that he is a Career Offender. As you can see from the Statement of Mr. Barretta, the factual allegations on the two convictions for Robbery in the Third Degree are denied. Since he had so many larcenies, and received concurrent sentences on all of them, he practically could not defend either of the charges. On the former one, he would have been taking a significant risk that, even if acquitted on the robbery charge, the attempted larceny charge (of which he was pretty clearly guilty) would, after a trial, have resulted in consecutive time. As to the second robbery charge, he had six and one-half years hanging over his head on the conviction in Paragraph 55. That fact, plus the Attempted Robbery I charge, effectively made it impossible for him to defend that case. If convicted of anything, he risked violation of his conditional release – and imposition of an additional sentence up to the 6 ½ years.



Jacobs,
Grudberg,
Belt &
Dow, P.C.

Going beyond that, concerning Paragraph 65, we object to categorizing the state Robbery 3rd convictions as "crimes of violence" under § 4B1.1 of the Sentencing Guidelines. In each of the instances cited in Paragraphs 48 and 63, there was no physical force "overcoming resistance . . . to the retention [of property]" (even based on the reports). In the second case, it is quite clear defendant had left the store without the property before any alleged altercation. That is perhaps a bit less clear concerning the 1996 robbery he pleaded to in Meriden. While Mr. Barretta insists he never took the goods to the front door or out, even the police report does not indicate that the alleged elbow to the head had to do with anything other than an escape – and not to retain the property. If we are correct in our reading of the statute, on both of the two instances he lacks the "at least two prior felony convictions of . . . a crime of violence". Clearly, under Connecticut law, even the alleged elbow to the head would not be sufficient to result in a felony assault charge – rather a misdemeanor Assault in the Third Degree, as there clearly appears to have been no "serious injury".

I speak now to Paragraph 102 concerning "Circumstances That May Warrant Departure". Even if all the arguments made above concerning the correctness of a finding of Career Offender are dismissed, we believe the totally isolated and very minimally "violent" episodes warrant a complete departure from Career Offender status -- rather than the very modest departure you suggested. Further, as I indicated when we met at the interview of Mr. Barretta, it is our feeling that the rather technical nature of the violation concerning a "distribution", a joint purchase with pooled money of two people, with defendant taking possession of the pooled amount briefly -- before he had time to turn over his half to the other participant places the facts here outside the heartland of the usual Possession with Intent to Distribute -- and therefore warrants a significant downward departure.

Finally, aside from the issue about Career Offender status, we believe defendant's criminal history points, all involving essentially non-violent larceny offenses to support a terrible heroin addiction, do not fairly reflect the seriousness of this criminal history. In reviewing the court's sentences on other "buyers' who pleaded to a § 841 charge, we do not believe that, based on Mr. Barretta's long standing and terrible addiction, he should do "that much more time" in comparison, especially in view of his successful completion of the inpatient program, and his continuing success in sobriety and abiding by the law.



Jacobs,
Grudberg,
Belt &
Dow, P.C.

Concerning Paragraph 79, I was a bit surprised that you chose not to interview Mr. Barretta's daughter Christina. As indicated in Paragraph 77, defendant told you he had a very good relationship with her. I recall him saying that Christina knew of the arrest and would be very positive concerning her relationship with her father. The fact that Ms. Lynch bad-mouthed Barretta, combined in the same paragraph with her request to not contact Christina, created an unfortunate juxtaposition, in view of Mr. Barretta's statements in the paragraph above.

Concerning Paragraph 83, the last sentence is incorrect. When Mr. Barretta was arrested, he was detained. When conditions of release were worked out, he was driven directly from the courthouse in Bridgeport (by me) to Crossroads in New Haven. He was totally clean at all times afterward. What he told you was that, after the time in early June when he was searched and relieved of the 50 bags of heroin they had purchased, he continued to use heroin (although it was going down some because of the increase in methadone), until the date of his arrest in July.

As to Paragraph 86, in addition to the CTI computer program, Frank did complete his GED while incarcerated. My recollection is that he did inform you of that at the initial interview. In that regard, in the course of that almost two hour interview, I was rather impressed by the general overall command of the English language, his vocabulary, and his generally coming through as an intelligent and well-spoken person.

I thought we had delivered to you the financial statement prior to the date of the report's issuance. I just wish to make sure that you have it, and that I did not lose track of it somewhere along the way. Please confirm.

Very truly yours,

JACOBS, GRUDBERG, BELT & DOW, P.C.

By_____

Ira B. Grudberg

ibg/ad
enc.
cc: H. Gordon Hall, Esq.

ADDENDUM TO THE PRESENTENCE REPORT
UNITED STATES DISTRICT COURT FOR THE DISTRICT OF CONNECTICUT
UNITED STATES V. FRANCIS R. BARRETTA; DKT. NO. 3:98CR00198(RNC)

## OBJECTIONS

### By the Government

As of the date of the second disclosure, no objections have been received from the Government concerning the presentence report.

### By the Defendant

Counsel for the defendant has submitted a letter containing comments and objections to the presentence report. This letter is attached for the Court's review. A letter signed by the defendant in response to the presentence report is also attached to this document for the Court's review.

Concerning ¶¶ 26 and 65, the defendant objects to the determination that he is a Career Offender and that Robbery in the 3rd Degree is a crime of violence. The probation officer refers the defendant to Guideline § 4B1.2, Application Note 1, at which robbery is included in the list of crimes of violence. While the underlying action of the criminal act, according to reports received, was a larceny, the defendant entered a guilty plea to robbery, which is a crime associated with the career offender guideline. The probation officer agrees that the career offender guidelines significantly overstate the seriousness of the defendant's criminal history.

Concerning ¶ 102, the defendant believes that a complete departure from the Career Offender guideline is warranted. The probation officer is not in disagreement with this statement, however, this paragraph offered the departure available according to the guidelines manual in effect.

Respectfully submitted,

**MARIA RODRIGUES McBRIDE**
**CHIEF U.S. PROBATION OFFICER**

By _____
Joseph P. Montesi
United States Probation Officer

2

Reviewed and Approved:

*Michael E. Sheehan*

Michael E. Sheehan
Supervising United States Probation Officer

JPM/rfg
January 11, 2005
New Haven, CT

STATEMENT

I make this Statement responding to the first publication of the Presentence Report in my case.

I am responding to the claim or inference that I am or ever was a violent person, or that I am a career offender because of convictions for violent crimes.

I frankly told the Probation Officer during my lengthy interview that much of my criminal history was enlarged by my "cleaning up" outstanding charges after I had been sentenced. The offense set forth in Paragraph 48 was one of them. The record shows it was a sentence of "three years jail, concurrent". Virtually none of the facts set forth in the police report were true. I tried to steal some stuff at Bradlee's and attempted to go out a side door. It would not open. I then left it in the store and walked to the front door. Although I placed the items in a carriage, I never pushed it to the front of the store and out the door. I was stopped by a security officer outside. I ran off and escaped in a car.

The statement supposedly taken from the other occupant "later detained" is untrue. He had stolen the plate that was on the car. The people at the store got the plate number as I was drove off. He was trying to get out of trouble himself by making up a story about me. I was represented by a Public Defender. We asked a number of times to view the tape they supposedly had. It made no sense to us that there was surveillance cameras outside the store. It never was given to us. After I got the longer sentence in New Haven, and they would not change the charge

in Meriden, I felt I had to plead to avoid the possibility of doing consecutive time later on – even if I beat the Robbery charge, I would have been guilty of attempted larceny. I don't recall whether it was an Alford Plea, but at all times I denied – and now deny – hitting the security officer.

As to Paragraph 63, it is all wrong. Originally I was charged with Attempted Robbery in the First Degree with the supposed plastic toy gun. I never had a plastic toy gun. When leaving the store, I was stopped by a New Haven Police Officer, working security there, along with Shaw's security person. I tried to run. They tackled and subdued me. I never hit anybody. They pretty much beat me up. At that point, I was facing much more time – six and one-half years possibly on the Paragraph 55 sentence, if I was convicted of anything. My Public Defender strongly recommended that I plead to the reduced robbery charge, based on no revocation of my conditional discharge.

I have never been a violent man. I never was armed. When I was going through periods of my addiction, in the 70s until my imprisonment, and then later in the 90s for a period of almost ten years, often I would steal to maintain the habit. I never threatened anyone. I never harmed anyone. Having me face a sentence of twelve and one-half to fifteen years was not only totally unexpected by me or my lawyer, but also the government lawyer. I knew my criminal history was very bad during the times where I was a heroin addict, but I spent almost thirteen years sober at one point and I now have the support and love of a person who will not put up with

my addiction ever again. I truly believe that, after some reasonable period of incarceration, I can and will be a productive and good citizen.

Dated at New Haven, this 28th day of December, 2004.

Francis R. Barretta



U.S. Department of Justice

United States Attorney
District of Connecticut

Connecticut Financial Center
157 Church Street
P.O. Box 1824
New Haven, Connecticut 06510

(203) 821-3700
Fax (203) 773-5376
www.usdoj.gov/usao/ct

October 7, 2004

VIA FAX AND MAIL

Ira Grudberg, Esq.
350 Orange Street
New Haven, CT 06510

Re:    United States v. Barretta
       No. 3:03CR198 (RNC)

Dear Mr. Grudberg:

I am writing to correct an error in the calculations contained in my letter to you of October 4 regarding the captioned case. By my calculations, and assuming acceptance of responsibility, a plea to the outstanding offer would bring him to level 15, category VI with a resulting range of 41 to 51 months. If he is tried and convicted as he is now charged, he would end up at level 26, category VI with a resulting range of 120 to 150 months, unless he were to receive a reduction for acceptance of responsibility. Even still, such a reduction would be limited to two levels, and his offense level would be 24, category VI for a range of 100 to 125 months.

I regret any inconvenience my error may have caused.

You should continue to consider the Government's offer in this case withdrawn as of close of business on Friday, October 8.

Very truly yours,

KEVIN J. O'CONNOR
UNITED STATES ATTORNEY

H. GORDON HALL
ASSISTANT U.S. ATTORNEY